216 N.J. Super. 502 (1987)
524 A.2d 450
JOSEPHINE MCVEY AND ANNA P. CIRINCION, INDIVIDUALLY AND AS CO-EXECUTRIXES OF THE ESTATE OF ELIZABETH PALERMO, AND ELIZABETH PALERMO, AN INCOMPETENT, DECEASED, BY AND THROUGH HER GUARDIAN ANNA P. CIRINCION, PLAINTIFFS-APPELLANTS,
v.
ENGLEWOOD HOSPITAL ASSOCIATION, A NEW JERSEY CORPORATION, RONALD DEMATTEO, ADMINISTRATOR, ENGLEWOOD HOSPITAL ASSOCIATION, JEROME D. GOLDFISCHER, M.D., JEFFREY M. MITCHELL, M.D. AND AARON RABIN, M.D., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 10, 1987.
Decided April 3, 1987.
*503 Before Judges MICHELS, O'BRIEN and LANDAU.
Donohue, Donohue, Costenbader & Strasser, attorneys for appellants (William I. Strasser and Michael P. Gambacorta, on the brief).
Bumgardner, Hardin & Ellis, attorneys for respondents Englewood Hospital Association and Ronald DeMatteo (Robert L. Polifroni and M. Christie Wise, on the brief).
*504 Conway, Reiseman, Mattia & Sharp, attorneys for respondents Jerome D. Goldfischer, M.D. and Jeffrey D. Mitchell, M.D. (Robert A. Giannone, on the brief).
Dughi & Hewit, attorneys for respondent Aaron Rabin, M.D. (Marjorie Gilman Baker, on the brief).
Stern, Dubrow & Marcus, attorneys, filed a brief on behalf of amicus curiae Society For The Right To Die, Inc. (Elena N. Cohen, Fenella Rouse, Richard Wasserman of the New York Bar, admitted pro hac vice, of counsel and Jo Anne C. Adlerstein, on the brief).
PER CURIAM.
This is an appeal by plaintiffs Josephine McVey and Anna P. Cirincion, individually and as co-executrixes of the Estate of Elizabeth Palermo, from a summary judgment granted in favor of defendants Englewood Hospital Association, Ronald DeMatteo, its Administrator, and Drs. Jerome D. Goldfischer, Jeffrey M. Mitchell, and Aaron Rabin. The summary judgment was embodied in an order of April 18, 1986 which dismissed the complaint, amended complaint and cross-claims. On leave granted the Society For The Right To Die, Inc. has filed an amicus curiae brief.
For purposes of the summary judgment motion, the following facts may be deemed accurate. The deceased, Elizabeth Palermo, suffered a severe stroke at the age of 91 and was taken to the defendant Englewood Hospital on March 17, 1985. In a deep coma and suffering from respiratory failure, she was connected to a respirator. The same evening, appellants McVey and Cirincion, Mrs. Palermo's daughters, were told by defendant Dr. Rabin, a neurologist, that her brain stem activity was minimal and that death would likely ensue if she were taken off the respirator. Commencing shortly thereafter the defendants were advised on various occasions that Mrs. Palermo's daughters requested, indeed demanded, that her maintenance on the respirator be terminated because Mrs. Palermo *505 had orally expressed the wish not to be artificially maintained if a situation such as this were to arise.
Defendants declined to terminate the life support system because Mrs. Palermo was not brain dead. On April 18, 1985, the appellants finally filed a complaint in the Chancery Division to declare Mrs. Palermo incompetent so that a guardian of her person could be appointed. An order was entered the very next day adjudicating Mrs. Palermo incompetent and appointing the present appellants as her co-guardians, with authority to make decisions on behalf of Mrs. Palermo as to medical treatment after 10 a.m. on April 21, 1985.
On April 22 the guardians requested that use of the respirator be discontinued, and it was discontinued that day. Mrs. Palermo died four days later.
In this suit the daughters seek compensatory and punitive damages on behalf of the Palermo Estate and for themselves, by reason of the substantial medical costs, and the emotional suffering alleged to have arisen from the failure of the defendants to honor their mother's wishes, as communicated by them in March.
Although plaintiffs and amicus suggest that a novel issue is here presented, we disagree and affirm the judgment below substantially for the reasons expressed by Judge Sciuto in his oral opinion of March 27, 1986. R. 2:11-3(e)(1)(A), (E). See Matter of Conroy, 98 N.J. 321, 381-383 (1985); In re Quinlan, 70 N.J. 10 (1976), cert. den. sub nom. Garger v. New Jersey, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); R. 4:83-1 et seq. Additionally, we note that nothing in the recent expressions by the courts of this State has changed the law respecting the manner by which the interests of living incompetents are protected. See, e.g. In re: Visbeck, 210 N.J. Super. 527 (Ch. Div. 1986). Mrs. Palermo was not brain dead. There was no evidence that she was suffering. Like Karen Ann Quinlan, she even survived discontinuance of her respirator, although by only four days.
*506 Hospital and medical personnel are charged with the heavy responsibility of saving lives and endeavoring to restore bodily function. The decision to turn off a respirator is ordinarily a medical one, for which the attending physician must take responsibility, Strachan v. John F. Kennedy Mem. Hosp., 209 N.J. Super. 300, 319 (App.Div. 1986), particularly where the patient relationship is initiated as the result of an emergency admission. Cf. John F. Kennedy Memorial Hosp. v. Heston, 58 N.J. 576, 583 (1971). Medical professionals are not now, and should not be, charged with the non-medical duty to determine the existence, veracity and effect of an incompetent's orally expressed wishes. Compare In re Schiller, 148 N.J. Super. 168 (Ch.Div. 1977). Neither do the hospital and medical professionals have the duty or the expertise to explore the extent of conflicting interests, views and purposes when an incompetent's relatives or friends urge discontinuance of life sustaining efforts because of such asserted wishes.
Here, once the procedures afforded by R. 4:83-1 et seq. were ultimately initiated, the system and the hospital responded with great expedition. In this case the trial court determined that Mrs. Palermo's daughters were appropriate guardians of her interest; but in others, advocates for termination of life support may have motivations less pure. A doctor should not be required as a matter of law to make such evaluation, any more than a banker who declines to release funds of an incompetent to a relative merely because the relative asserts the existence of oral instructions to that end.
We emphasize that this case does not raise the issue whether a hospital or physicians may reasonably consider the wishes of close relatives, or reports of close relatives as to the wishes of the patient, in connection with difficult medical decisions such as here presented. Unlike cases cited by appellant and the amicus such as Barber v. Superior Court of State of California, 147 Cal. App.3d 1006, 195 Cal. Rptr. 484 (Cal.Ct.App. 1983), and John F. Kennedy Memorial Hosp. v. Bludworth, 452 So.2d *507 921 (Fla. 1984), the question here is not whether the medical professional may be subjected to civil or criminal liability for acquiescing in the expression by the immediate family of the presumed or actual wish of the incompetent respecting termination of life support. Barber and Bludworth hold that physicians are free from civil or criminal liability in such circumstances. It is a very different thing, however, to assert that failure to comply with such undocumented requests, and absent the appointment of a guardian, constitutes an actionable breach of a duty owed to the patient and family. That time has not come in New Jersey.
Affirmed.